### BANK OF NORTH AMERICA *v.* PETTIT.

### *Notice of non-payment.*

Notice of non-payment of a promissory note by the maker, must be given by the holder to the indorser, with a demand of payment from him, within a reasonable time.

What constitutes a notice within a reasonable time, still remains, in Pennsylvania, a fact for the jury to determine.

CASE 'against the payee and indorser of a promissory note, made by George Henry, for $1100, payable in 45 days, and dated the 26th of March 1785. The defence was, that due notice had not been given of the maker's non-payment of the note ; and the following evidence was produced *pro* and *con.*

For the *plaintiff*, the runner of the bank stated, that he believed he gave the maker notice when the note became due, as it was his custom to do ; that it was also his custom, at the expiration of the three days' grace, to give the indorser notice ; and he conceived, he must have called on the defendant on the evening of the last day of grace ; but if not then, he was very clear, he called the next day, or the second succeeding day, at farthest ; that he thinks he spoke to the defendant's son, and supposes he mentioned his business ; that his reason for thinking he gave notice is, that he has a memorandum of Henry's notes lying over ; and the president of the bank was very particular about them, and the indorsers; that when he called at the defendant's counting-house, he gave verbal notice, that the indorsement was unpaid, and the person he saw, told him that he would inform the defendant of it ; that it was not then a practice to leave written notice ; and finally, that he was not doubtful, but very clear, that he gave the notice.

For the *defendant*, his clerk declared that it was usual to leave notice of the protest of notes in writing ; and that he did not recollect that either written or verbal notice was given in the present case. The defendant's son declared, that he had no recollection of receiving any notice ; but, on the contrary, he remembered, *that, upon making an estimate of his *128] father's indorsements at the bank, the cashier said they amounted to $2300 ; and this being denied, Henry's note was produced ; which was the first intimation that the son ever had of its existence, or of its being protested.

It was argued by *Tilghman* and *Lewis*, for the plaintiff, that although the cause turned upon a mere matter of fact; and that fact being established, the decision must be governed by the principles of the mercantile law, which, generally considered, are the same throughout the mercantile world ; yet, that there are special usages, arising from local circumstances, or municipal policy, that must prevail, in modifying the operation of the general law of merchants. Thus, the general law of merchants declares, that the acceptor of a bill of exchange is bound by his acceptance ; but how far he is bound, varies at different places. (*Burrow* v. *Jemino*, 2 Strange 733.) So, notice of the protest of a bill of exchange must be given, upon the principles of the general law; but there is a different usage, in different places,

Bank of North America v. Pettit.

as to the strictness of the time, within which the notice must be given. The statute of *Anne* introduced the negotiable character of promissory notes, and the process of declaring upon them as instruments. The practice of giving notice, in the case of promissory notes, soon followed in England, though the statute speaks nothing of the time ; but, at first, a great latitude was allowed ; and it is only, step by step, that the present degree of strictness on the subject has been there established. In Pennsylvania, however, promissory notes were scarcely to be regarded as a currency, before the revolution ; insomuch that it is difficult to trace a suit on the records of the courts, by the indorsee against the indorser. The act of assembly of 1715, which gave the indorsee an action against the maker, in his own name, made no positive provision on the subject of notice ; and the English practice was not adopted under the act. Punctuality, indeed, in paying such engagements, was rare, and almost impracticable, from the state of the country. The Bank of North America began the rule of punctuality ; and originated the usage of notice ; and upon that usage, a period of six, seven or eight days has been allowed for giving the notice. What, then, is the evidence of a demand of payment from the indorser, in a reasonable time, is the only question. The runner of the bank gave notice of the protest ; and this, by the common understanding of our merchants, amounts to information, that the holder of the note looks to the indorser for satisfaction. The cases cited for the plaintiff were 2 Str. 1175, 1248 ; Ld. Raym. 744 ; *Robertson* v. *Vogle*, 1 Dall. 252 ; *Bank* v. *McKnight*, Ibid. 158.

It was argued by *Ingersoll* and *Sergeant*, for the defendant, that the holder of a dishonored note, must conform to the law-merchant, *which [\*129 requires notice to be given to the indorser ; as even the declaration shows, by the averment that notice was given : and they contended, that the notice in this case (if given at all) not being given to the defendant on the very next day, after the expiration of the days of grace ; and not being accompanied with an explicit demand for payment, was not a sufficient notice, according to the law of merchants ; which being, in this respect, founded on general principles of reason and equity (to prevent the indorser from suffering by the indulgence or negligence of the holder), was as applicable in Pennsylvania, as in any other country. They cited 1 Wils. 47 ; 2 Bl. Rep. 747 ; Doug. 650 ; 2 T. R. 713; 1 Dall. 252 ; Bull. N. P. 274–6 ; 1 Str. 508.

By THE COURT.—The defence is want of notice of the protest of the note in question, within a reasonable time. The law in England is very strict upon this subject. Before any tatutes existed there, to render promissory notes negotiable, such notes were often made ; but they were only regarded as evidence of a debt, and could not, as instruments, ae declared upon in an action at law, until the provision was made in the statutes of *Wm. III.* and *Anne.* It is not material, however, to review the history of this paper medium, either here or in England ; since it is clear, that in both countries, at this day, the law requires, that notice must be given by the holder, to the indorser of a promissory note, with a demand of payment, in a reasonable time after the note is dishonored by the maker. (*a*) What con-

---

(*a*) "Death, bankruptcy, notorious insolvency, or the drawer's being in prison, con-

stitutes a reasonable time, was formerly considered, by the English courts, in most cases, as a matter of fact, for the decision of a jury : and since it has been deemed by those courts, a matter of law, they have held, that if the parties live in the same town, an allowance of even a single day to the holder is quite sufficient. But in Pennsylvania, the question of reasonable notice still remains a fact for the jury to determine. Before the institution of the Bank of North America, promissory notes were few ; there was no time fixed for giving notice ; and two or three months have often elapsed, before it was given. The bank had, however, a right to introduce new rules, for transacting business with their customers ; and those rules being understood and enforced, formed a law of the contract, binding on both parties. Indeed, the punctuality, and other beneficial consequences, flowing from those rules, seem to have given them a more general operation and force ; so as to constitute a general usage, and not merely a usage of the bank. But notwithstanding the necessity of giving notice exists, on general principles, as well as upon the usage, its reasonableness, we repeat, still depends, here, upon the verdict of the jury. As soon as we can, consistently with the state of the country, its roads, and its posts, it will be wise to *130] adopt the English law upon the *subject, for the sake of certainty and uniformity, in the administration of justice : and perhaps (such is the rapid progress of population and public improvement), the court may, in future, incline to adopt it.(a)

---

stitute no excuses, either at law or equity; because many means may remain with him of obtaining payment, by the assistance of friends or otherwise, of which it is reasonable the indorser should have an opportunity of availing himself; and it is not competent to the holder to show, that delay in giving notice, has not, in fact, been prejudicial." Gibbs *v.* Cannon, 9 S. & R. 201.

(a) As to what is sufficient notice of non-payment of a promissory note, and when such notice must be given, see Steinmetz *v.* Curry, 1 Dall. 234–5 n.; Robertson *v.* Vogle, Id. 252–6 n.; Ball *v.* Dennison, *post*, p. 163 ; Smith *v.* Hawthorn, 3 Rawle 355. Verbal notice is sufficient, and a protest, with notice thereof, is not necessary. Rohm v. Philadelphia Bank, 1 Rawle 335.